# CASES DETERMINED

BY THE

# SUPREME COURT

ᴏF THE

## STATE OF MISSOURI

ᴀᴛ THE

### OCTOBER TERM, 1906.

---

*(Continued from Volume 199.)*

---

### THE STATE v. HARRY VAUGHAN, GEORGE RYAN and EDWARD RAYMOND, Appellants.

Division Two, December 4, 1906.

1. **MURDER: Evidence: Killing of Another: Res Gestae.** Defendants, convicts in the penitentiary, in pursuit of an unlawful agreement among them to intimidate the officers of the prison in order to enable them to escape therefrom, killed a guard named Clay at the gate, for whose murder they were on trial, and in further pursuit of such attempt to escape, a few moments later killed another guard named Allison. *Held*, that evidence of the killing of Allison was properly admitted as a part of the *res gestae*. Everything occurring contemporaneously with the main difficulty is a part of the *res gestae*.

2. ———: ———: ———: **In Attempt to Commit Felony.** Evidence of the killing of Allison was admissible also on the ground that it was committed in furtherance of the success of the agreement or understanding among defendants to commit a felony, namely, to forcibly escape from the penitentiary.

(1)

State v. Vaughan.

3. ———: ———: **Prearrangement to Kill Another.** Nor was it necessary, in order for evidence of the killing of Allison to be admissible, that it be shown that there was a prearranged understanding among defendants to kill him.

4. ———: ———: ———: **Conspiracy.** When two or more persons enter upon an unlawful understanding, with a common purpose, to aid and assist each other in whatever may grow out of the understanding, each is responsible, civilly or criminally, for everything which may proximately result from such unlawful purpose, whether contemplated at the time the arrangement was made or not, and whether actually performed by all or any one of the wrongdoers.

5. ———: **Several Codefendants: Instruction: Separate Verdicts: Province of Jury.** Where several defendants, engaged in a common purpose to commit a felony, in the pursuit of which a murder was committed by one of them, are tried together, even though they may all alike be guilty, they are entitled to have the jury instructed that they are at liberty to find one or more of them guilty and others not guilty, and the refusal of the court to give such an instruction is reversible error. Whether or not they are all alike guilty is a question for the jury to determine, and it is their province, if so inclined, to acquit one or all of them, or to acquit some and find the others guilty, or guilty of a less degree of the crime than that charged, notwithstanding the evidence to the contrary. So that it was error, where three men were being tried and instructions were given for murder in the first degree only, to require the jury to find all guilty or acquit all.

6. ———: ———: **Rights of Accused: Separate Verdicts.** Each of several codefendants, indicted and jointly tried for the same murder, though a conspiracy is clearly shown, is entitled to have the jury pass upon his guilt or innocence and to have the evidence considered in regard to his particular case, unbiased and uninfluenced by the evidence in respect to his codefendants.

7. ———: ———: **Conspiracy to Commit Felony: Agreement Not to Commit Murder: Instruction.** Where several defendants entered into a common undertaking to commit a felony, namely, to escape from prison, and in pursuance of that concerted purpose one of them killed a guard, the court should not instruct the jury that, if an agreement was made among them and it was distinctly understood that no one was to be killed in carrying out their undertaking, no one except the one who actually did the killing could be convicted of the murder. The murder being committed in the perpetration of another felony and in accordance with a concerted plan to commit that felony, they were all equally guilty of the resulting murder.

State v. Vaughan.

8. ——— : ——— : ——— : ——— : ——— : **Contrary to Physical Facts.** And where such pretended agreement and distinct understanding that no one was to be killed in the perpetration of the felony agreed upon, was inconsistent with the physical facts, the court should for that reason alone refuse such an instruction. Courts are not required to yield credence to the statement of a defendant which is absolutely inconsistent with the physical facts, and base an instruction on such simulated evidence.

9. ——— : **Instructions for First Degree Only.** It is held in this case that the court correctly restricted the instructions to murder in the first degree, there being no evidence justifying instructions for a less degree.

Appeal from Cole Circuit Court.—*Hon. Wm. H. Martin,* Judge.

REVERSED AND REMANDED.

*E. L. King* and *Edwin Silver* for appellants.

(1) The court erred in permitting the State to introduce evidence of the killing of Allison. The record shows that the killing of Clay occurred from five to ten minutes before the shooting of Allison, and was a separate and distinct offense, and that the homicide of Allison was really not necessary to throw light on or to explain the killing of Clay; hence, the evidence as to the Allison killing was incompetent and inadmissible. 1 Bish. New Crim. Proc. (4 Ed.), sec. 1120. (2) The court erred in denying to defendants the benefit of instructions 2 and 4 asked by them. 1 Bishop's New Crim. Procedure, sec. 1035; 1 Archibald's Crim. Procedure (8 Ed.), p. 303; State v. Kaiser, 124 Mo. 651; Abrams v. State, 121 Ga. 170; State v. Daniels, 38 So. 894; Mo. Const., art. 2, secs. 22 and 28. (3) The trial court also committed error in refusing to give instructions 5 and 6 requested by defendants. (4) The trial court committed error in refusing to give instructions 7, 8 and 8½ requested by defendants. State v. May, 142 Mo. 135; People v. Knapp, 26 Mich. 112; Mercer-

smith v. State, 8 Tex. App. 211; Frank v. State, 27 Ala. 37.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) (a) The State's evidence, to the effect that immediately after the shooting of deceased Clay one of the defendants shot and killed Mr. Allison and wounded Mr. Young and shot at Mr. Bruner, was properly admitted. The persons named were guards in the penitentiary and witnesses to the effort made by defendants to escape, and also witnesses to the killing of the deceased Clay. And the evidence referred to tended to prove that the defendants were not only trying to escape from the penitentiary and avoid being captured, but were also trying to kill the persons who witnessed the commission of their crime. The fact that said evidence tended to prove the commission of another crime by defendants does not alter the rule. State v. Taylor, 118 Mo. 162; State v. Sanders, 76 Mo. 36; 1 Greenl. on Evidence, sec. 108; 1 Wigmore on Evidence, sec. 218; State v. Perry, 136 Mo. 126; State v. Vinso, 171 Mo. 587; Wilkerson v. State (Tex.), 19 S. W. 903. (b) The evidence that, immediately after their escape from the penitentiary, the three defendants and Blake ran down the railroad track toward the freight depot of the Missouri Pacific Railroad Company, that they fired at the prison officials, police and citizens who tried to interfere, that they compelled a teamster to drive them to a distant part of Jefferson City, that they made resistance to the utmost, and were found in possession of three pistols, a quantity of ammunition, dynamite, nitroglycerin, caps, etc., was also properly admitted. Such evidence has been held admissible in behalf of the State, and a proper subject of consideration by the jury. State v. Moore, 101 Mo. 330; People v. Petmecky, 2 N. Y. Crim.

459; 4 Elliott on Evidence, sec. 2724; 1 Wigmore on Evidence, sec. 276; Underhill on Crim. Evid., secs. 118 and 120; Bishop on Crim. Proc. (3 Ed.), sec. 1249; Wharton's Crim. Evid. (9 Ed.), sec. 750; Jamison v. People, 145 Ill. 376; State v. Shaw, 74 Vt. 153; Wills on Cir. Evid., 130-137; Com. v. Bittle, 200 Pa. St. 648; State v. Phillips, 118 Iowa 666; Waite v. State, 13 Tex. App. 180; People v. Flannelly, 128 Cal. 87; Bowles v. State, 58 Ala. 335; People v. Fredericks, 106 Cal. 516; Wharton on Homicide, sec. 710. (2) Murder committed in the perpetration of another felony, or in the attempt to commit another felony, is murder in the first degree. Even if the defendants armed themselves solely for the purpose of making their escape from prison (which no person can believe), still they were guilty of murder, which was committed as an attendant result of such effort to escape. Mayes v. People, 106 Ill. 306; State v. Bailey, 190 Mo. 288; Evans v. State, 109 Ala. 22; 2 Bishop's New Crim. Law, sec. 641; 2 Wharton's Crim. Law, sec. 1405; Martin v. State, 89 Ala. 118; Peden v. State, 61 Miss. 270; 1 Bish. Crim. Law, sec. 636; Boyd v. U. S., 142 U. S. 455; Ferguson v. State, 32 Ga. 658; State v. Walker, 98 Mo. 105; Kirby v. State, 23 Tex. App. 25. (3) No error was committed in the refusal of the defendants' instruction 2. This instruction, in effect, told the jury that they could convict one of the defendants and acquit the others. This instruction was clearly erroneous, in view of the evidence and all the evidence in this case. All three of the defendants testified in this case; and the testimony of all was to the same effect. Each one admitted the conspiracy that was entered into by them to escape from prison, and to force their way out if necessary; and each admitted that pistols, cartridges, dynamite, nitroglycerin, etc., had been sent to them to aid in their unlawful undertaking; and each admitted that he took a loaded pistol and carried the same in his hand when the assault was made on the deputy warden. If either defendant had

failed to testify, or if he had testified denying the above-named facts, then perhaps the trial court would have been justified in giving said refused instruction. But when each defendant testified, and admitted all that the State proved against him, then there was no conflict in the evidence, and it stood admitted, and admitted under oath by the defendants, that each was guilty of murder in the first degree. The fact that the defendants further testified that they did not intend to injure or kill anyone did not alter the case, as the facts and circumstances attending the assault showed the contrary. State v. Bryant, 102 Mo. 32; State v. Tabor, 95 Mo. 585; State v. Nelson, 118 Mo. 126; State v. Pollard, 139 Mo. 220; State v. Hancock, 148 Mo. 488; State v. Logan, 84 Mo. App. 584; State v. Dettmer, 124 Mo. 435.

BURGESS, P. J.—Appeal from the judgment of the circuit court of Cole county, rendered January 2, 1906, upon a verdict convicting the defendants of the crime of murder in the first degree, the punishment for which is death.

The conviction was for having killed and murdered one John A. Clay, who was at the time a guard at the Missouri penitentiary and in the discharge of his duties as such.

The defendants and one Hiram Blake were, at the time of the commission of the alleged crime, legally imprisoned in said penitentiary. Around the buildings and grounds of said penitentiary there is and was a high stone wall, and the entrances are in the west wall. A short distance north of the north wall are situated the tracks of the Missouri Pacific Railroad Company, and a few feet north of said tracks is the Missouri river. There are two entrances referred to by the witnesses in this case; one of them through the office in the administration building, entered the grounds through an ordinary door opening into an iron cage; and the

other one being the wagon entrance. This last-named entrance was used by all vehicles that had occasion to go in and out, and consisted of two sets of double doors, situated some distance from each other. On the 24th day of November, 1905, R. E. See was deputy warden, and John A. Clay, E. Allison, J. K. Young and John Bruner were guards at said prison. It was the duty of Clay to stand in the wagon entrance between the two double doors, inspect the contents of the various loads that passed through said entrance and attend to the locking and unlocking of the doors. See's office was on the ground floor and opened out into the yard of the prison, and this yard opened into the stockade, in which were located the prison shops, where the three defendants and Blake were working. About three o'clock in the afternoon of said day two gentlemen were admitted as visitors to the prison and were sitting in the deputy warden's office talking to a prisoner, when the three defendants and Blake appeared at the door of said office, with pistols in their hands, and commanded Deputy Warden See to hold up his hands, threatening to kill him if he refused. See endeavored to draw his pistol, and one of the four convicts (perhaps Blake) fired his pistol, striking See in the wrist, and also wounding defendant Vaughan in the hand. Vaughan was in the act of grabbing See's hand when Blake shot at See. See was then disarmed by them, dragged out of his office and ordered to march between Blake and defendant Vaughan to the wagon entrance; and the two visitors were also ordered to march, one by the side of defendant Ryan, and the other by the side of defendant Raymond. The wagon entrance was reached just as the inner doors were being opened to admit a two-horse wagon into the prison yard, and the four convicts rushed through said doors, taking with them See, and one of the visitors, the other visitor managed to get loose and escape. The four convicts ordered Clay, who was on duty at that point, to hold up his

hands, which he did, and he was then ordered to hold his hands higher. Some one in the wagon entrace then fired at Clay, striking him in the neck and killing him instantly. As the space in this wagon entrance was tolerably dark, neither See nor the visitor could recognize who it was that fired said shot; but the man driving the team (Charles Woodland) testified positively that the defendant Vaughan was the first man to rush into said wagon entrance, and that Vaughan fired said shot. Several other shots were fired by defendants and Blake in said entrance, some of them so close as to burn See's face with powder. The convicts ordered See to unlock the outside doors, but he told them he could not and did not know how; and finally suggested to them that he could show them a better way out through the office. The convicts then went with See up to a door that opens into this wagon entrance from the guard room, when Allison appeared at the door and ordered the men to throw up their hands, when one of the four shot and killed Allison. One of the four convicts then shouted, "Kill them all, let's shoot our way out." About that time one of them shot See in the shoulder and in the side, causing him to fall to the ground. One of the convicts said, "Capt. See is dead. Now get to work, we are losing time." Young was upstairs in the armory but immediately came down to ascertain the cause of the disturbance. He saw the body of Allison on the floor, he was walking towards the door opening into the wagon entrance, when some one in said entrance shot him. Hearing the firing, Bruner ran to the inner doors of said entrance, and looked in through a small hole in said door. Some one in the wagon entrance commanded him to get away and shot at him. These four convicts then tried to use nitroglycerin on the outer doors of the wagon entrance. They were successful, and a large strip was blown off of one of said doors, making a hole sufficient in size for them to jump through and make their escape, which they did. After

getting outside of the prison, the three defendants and Blake ran together towards the Missouri Pacific tracks, and along said tracks west towards the freight depot. See procured a gun and, in company with guard Bruner, followed them towards the depot. Bruner soon came within range of them, exchanged several shots with them, and wounded Blake in the leg. Blake was then captured and taken back to the prison, where he soon died from the effects of said wound.

In the meantime, the police of Jefferson City had been notified of this trouble, and had joined with prison guards and citizens in pursuit of the escaped convicts. The three defendants, seeing that Blake was disabled, jumped into a wagon and fired twice at Bruner and See. These defendants compelled the driver to get into the wagon with them, and began to whip the horses. Leonard Greene was standing near the wagon and undertook to stop the horses, when defendant Vaughan pointed his pistol at Greene and said, "Let go." Greene promptly obeyed. Vaughan took the lines and drove as fast as he could in a southwest direction. He drove until Ryan fell out of the wagon and was captured. Before falling out of the wagon Ryan fired his pistol once at Moerschel, who had caught the team, and then twice at the police who were in pursuit. Moerschel let go of the horses and as soon as the other two defendants saw that the horses had been released, they drove on until the driver fell out of the wagon, and some prison guards and police officers compelled said two defendants to surrender. At the time of the capture each defendant had a forty-four calibre pistol in his hand; and from forty to one hundred cartridges in his pocket; and the defendant Vaughan had a stick of dynamite, a bottle of nitroglycerin and some fuse and caps.

The State's evidence further showed that John A. Clay's death was caused by a gunshot wound in the neck, which was made by a bullet from a forty-four calibre pistol.

The three defendants testified in their own behalf, and the substance of their testimony was to the effect that a few days prior to the commission of the alleged crime they were in the same cell in the prison and agreed with Blake to make an effort to escape. That a friend (whose name they declined to give) had sent them the pistols, cartridges, nitroglycerin, dynamite, etc., which they took for the purpose of frightening the prison officials. They further testified that it was distinctly agreed between them that no one should be hurt or killed. They admitted that they went to the deputy warden's office, covered him with their pistols, that Blake shot See in the wrist, that they marched with See to the wagon entrance, where they and Blake fired their pistols a number of times. That they compelled Deputy Warden See and a visitor to go with them to the wagon entrance, compelled Clay to hold up his hands, and that Clay and Allison were shot. Each one of the three defendants denied that he shot either Clay or Allison, and each expressed the opinion that Blake did it. They admitted that they blew open the outside door with nitroglycerin, passed through the opening, ran west to the freight depot, jumped into a wagon and compelled the driver to take them to the southwest part of the city, where they were captured.

The court over the objection and exceptions of defendants instructed the jury as follows:

"1.    The court instructs the jury that the defendants are presumed to be innocent, and it devolves upon the State to prove their guilt beyond a reasonable doubt, and unless the State has established the guilt of the defendants, as charged in the indictment, to your satisfaction and beyond a reasonable doubt, you should give the defendants the benefit of such doubt, and return a verdict of not guilty. But such doubt, to authorize an acquittal on that ground alone, should be a substantial doubt of guilt arising from the evidence in the case, and not a mere possibility of innocence.

"2.   The court instructs the jury that if they believe and find from the evidence, beyond a reasonable doubt, that on the 24th day of November, 1905, the defendants and another person named Hiram Blake were confined as prisoners in the Missouri State Penitentiary, in Cole county, Missouri, and while so confined agreed with each other to make or attempt to make an escape from prison, and in so doing and while acting in concert with each other and in the furtherance of a common design to make such escape, either one of the four persons so attempting to escape did, in the presence of the other three, wilfully, feloniously, deliberately, premeditatedly and of malice aforethought kill John A. Clay, in the county aforesaid, while he was in the peace of the State and in the discharge of his duties as a guard at such penitentiary, by shooting him upon the neck or head with a pistol and thereby inflicting upon him a mortal wound of which he then and there instantly died, then they will find all three of the defendants, Harry H. Vaughan, *alias* Harry Vaughn, George Ryan, *alias* Charles Stevens, and Edward Raymond guilty of murder in the first degree and so state in their verdict.

"3.   The court further instructs the jury that if they believe and find from the evidence in this cause, beyond a reasonable doubt, that one Harry H. Vaughan, *alias* Harry Vaughan, in Cole county, Missouri, on the 24th day of November, 1905, feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought, shot with a pistol, and by such shooting killed John A. Clay, and that the defendants, George Ryan, *alias* Charles Stevens, and Edward Raymond, were then and there present, feloniously, wilfully, deliberately, premeditatedly and of their malice aforethought, aiding and abetting, advising, counseling, assisting or procuring the said Harry H. Vaughan, *alias* Harry Vaughn, in such shooting and killing, then defendants George Ryan, *alias* Charles Stevens, and Edward Ray-

mond were, within the meaning of the law, each as guilty as if he had fired the fatal shot himself.

"4. The court instructs the jury that while it is necessary for the killing to be willful, deliberate, premeditated and with malice aforethought, in order to constitute murder in the first degree, yet these elements need not be proved by direct evidence but may be deduced from all the facts and circumstances attending the killing, and if you can satisfactorily and reasonably infer their existence from all the evidence in the case, beyond a reasonable doubt, you will be warranted in so finding.

"5. As used in the indictment and these instructions, 'feloniously' means wrongfully and wickedly and also refers to the punishment imposed by law.

" 'Wilfully' means intentionally and not done by accident.

" 'Premeditatedly' means thought of beforehand, for any length of time, however short.

" 'Deliberately' means done in a cool state of the blood, not in sudden passion, engendered by lawful or some just cause of provocation. And the court instructs the jury that in this case there is no evidence tending to show the existence of any such passion or provocation.

" 'Malice' means that condition of the mind which prompts one to do a wrongful act intentionally, and to take the life of another without legal justification or excuse. It does not mean mere spite, hatred or ill-will, but it signifies the state of disposition which shows a heart regardless of social duty and fatally bent on mischief, and 'malice aforethought' means that the act was done with malice and premeditation.

" 'Malice,' as used here, may be presumed from the intentional use of a deadly weapon in a manner likely to produce death.

"6. The jury are the sole judges of the credibility of the witnesses and of the weight and value to be given

to their testimony. In determining as to the credit you will give a witness, and the weight and value you will attach to a witness's testimony, you should take into consideration the conduct and appearance of the witness upon the stand, the interest of the witness, if any, in the result of the trial, motives actuating the witness in testifying, the witness's relation to or feeling for or against the defendant, or the alleged injured party, the probability or improbability of the witness's statements, the opportunity the witness had to observe and to be informed as to matters respecting which such witness gives testimony, and the inclination of the witness to speak truthfully or otherwise as to matters within the knowledge of such witness. All these matters being taken into account with all other facts and circumstances given in evidence, it is your province to. give each witness such value and weight as you deem proper. If, upon a consideration of all the evidence, you conclude that any witness has sworn wilfully falsely as to any material matter involved in the trial, you may reject or treat as untrue the whole or any part of such witness's testimony.

"7. The defendants are competent witnesses in their own behalf, but the fact that they are the defendants, and, as such, interested in the result of this case, may be considered by you in determining the credibility of their testimony.

"8. The court instructs the jury that under the evidence in this case you will find the defendants guilty of murder in the first degree or acquit them; and you are further instructed that if you find the defendants guilty of murder in the first degree, you will simply say so in your verdict, as you have nothing whatever to do with the punishment. If you find the defendants not guilty you will return a verdict to that effect."

And to the giving of which said instructions by the court the defendants, by counsel, then and there duly excepted at the time.

And the court, at the request of the defendants, through counsel, gave to the jury the following instructions, to-wit:

"1.   The jurors are instructed that the indictment in this case is of itself a mere formal accusation or charge against the defendants and is not of itself any evidence of the guilt of the defendants, or of any one of them, and no juror should permit himself to be to any extent influenced against any of the defendants because or on account of the indictment in the case, nor by reason of the fact that they were convicts in the Missouri State Penitentiary when the killing charged in the indictment occurred.

"3.   The court instructs the jury that the law presumes the defendants in this case to be innocent of murder in the first degree and clothes him or them with such presumption of innocence throughout the trial; and you should act on such presumption and acquit the defendants unless the State, by evidence, satisfies you of his or their guilt beyond a reasonable doubt.

"9.   The court instructs the jury that the mere presence of a person at the scene of a homicide, or even his presence and approval thereof, do not make him a guilty participator in said homicide.    To make him a guilty participator he must have aided, assisted, instigated, abetted or advised said killing as explained in other instructions given by the court in this case."

And the defendants prayed the court to give to the jury the following instructions, which the court refused to do, to-wit:

"2.   The court instructs the jury that they are at liberty to find one or more of the defendants guilty and others not guilty, as they may deem right and proper under the instructions of the court and the evidence in the case.

"4.   The court instructs the jurors that if they have a reasonable doubt (as that term is defined in other instructions given in the case) as to any one or more

of the defendants on trial being guilty of murder in the first degree, as that offense is defined in other instructions given in this case, the jurors will acquit such defendant or defendants as to whom such doubt is entertained.

"5. The court instructs the jurors that in considering their verdict they will exclude from their consideration all matters in evidence relating to the death of E. A. Allison and the shooting of J. C. Young (referred to in the testimony) and also all the evidence before the jurors relating to the pursuit and capture of defendants after their escape from the penitentiary on November 24, 1905.

"6. If the defendants killed John A. Clay, the deceased, with premeditation and malice aforethought but without deliberation (as those terms are defined in other instructions given in the case), then they are not guilty of murder in the first degree, but of murder in the second degree, and if the jurors find them or either of them to be guilty of murder in the second degree, they will assess the punishment therefor in the State penitentiary for a term of imprisonment of not less than ten years.

"7. If the jurors believe and find from the evidence that co-defendants Vaughan, Raymond and Ryan, and one Blake, were on November 24, 1905, and had been previous thereto convicts in the Missouri State Penitentiary; that while so confined in said prison they agreed and combined together to effect their escape therefrom, but that it was expressly understood and agreed among them that no officers or guards of the prison should be killed or injured in effecting such escape; but that said escape should be effected solely and wholly by means of intimidating said officers and guards and thereby compelling them to let them, said convicts, outside of the prison enclosure; and if the jury further find that while said convicts were carrying out said purpose or plan of escape, the deceased,

John A. Clay, was killed by one of the defendants; and that said act of killing was a departure from the purpose and plan agreed on by said Blake and the defendants in effecting their escape and was not within their joint purpose and plan in so making their escape, and if said killing was not advised, counseled, instigated, aided or abetted by the defendant or any of the defendants on trial, then said defendant (or defendants) not so instigating, counseling, abetting, aiding or advising said killing, is not guilty of the offense charged in the indictment in this case.

"8.   If the person mentioned in the evidence as Blake shot and killed the deceased John A. Clay, and said killing by said Blake was a departure from the purpose and plan of the defendants now on trial, and said Blake, in effecting their escape from the Missouri penitentiary, was not within their joint purpose or plan in making said escape, and these defendants or one or more of them did not advise, counsel, or instigate or aid Blake to kill the deceased, but said Blake did said killing of his own motion, then said defendants or defendant not so advising, counseling, aiding or instigating said killing are not guilty under the indictment in this case.

"8½.  If the defendant Vaughan shot and killed the deceased, John A. Clay, and said killing by said Vaughan was a departure from the joint purpose or plan of the defendants on trial and one Blake in effecting their escape from the Missouri penitentiary on November 24, 1905, and was not within their said joint purpose or plan in making their escape, and the defendants Ryan and Raymond did not advise, counsel, instigate or assist said Vaughan to kill the deceased, but said Vaughan did said killing of his own motion, then said co-defendants Ryan and Raymond are not guilty under the evidence in this case, and the jurors will return a verdict of not guilty as to them."

To the refusal of the court to give said instructions

the defendants then and there duly excepted at the time.

It is insisted that the court erred in permitting the State to introduce over the objections of defendant evidence of the killing of E. A. Allison. Allison, Clay and Bruner were all guards at the penitentiary and the killing of the first two was in pursuance of the unlawful agreement of defendants to intimidate the officers of the prison in order to enable them to escape therefrom, and evidence as to the killing of Allison was part of the *res gestae.* "Everything occurring contemporaneously with the main difficulty was a part of the *res gestae,* and there was no error in the admission of such evidence." [State v. Woodward, 191 Mo. l. c. 633.]

It was admissible upon the further ground that the homicide was committed in furtherance of the success of the agreement or understanding between the defendants and Blake to commit a felony, that is, to forcibly break and escape from the penitentiary. [Sec. 2067, R. S. 1899.]

Nor was it necessary to the introduction of this evidence that it be shown that there was a pre-arranged understanding to kill or shoot Allison, for when two or more persons enter upon an unlawful undertaking, with a common purpose, to aid and assist each other in whatever may grow out of the undertaking, each is responsible, civilly or criminally, for everything which may proximately result from such unlawful purpose, whether contemplated at the time the arrangement was made or not, and whether actually performed by all or any one of the wrongdoers.

"If several conspire to do an unlawful act, and death happens, in the prosecution of the common object, they are all alike guilty of the homicide. Each is responsible for everything done, which follows incidentally in the execution of the common purpose, as one of its probable and natural consequences, even though it

200 Sup—2

was not intended, or within the reasonable contemplation of the parties, as a part of the original design." [Evans v. State, 109 Ala. 1. c. 22; 2 Wharton, Crim. Law, sec. 1405.]

No point is made by counsel for defendants upon the instructions given in behalf of the State, but it is earnestly insisted that the court erred in refusing instructions asked by defendant.

It is insisted that instruction number two asked by defendants should have been given and a separate finding or verdict as to each one required, because each of them had the right to have his case passed upon by the jury, as if he alone were upon trial. As the case went to the jury this phase of it was not submitted to them, in the absence of which the jury may have believed that it was their duty under the evidence and instructions to find the defendants all guilty or to acquit them all. While it may be true that they were all alike guilty, were they not entitled to have the jury instructed that they were at liberty to find one or more of them guilty and others not guilty, as they might believe from the evidence? We think they were. It is no answer to this suggestion to say that under the evidence they were all alike guilty, for that question was for the consideration of the jury, and it was their province if so inclined to have acquitted either one or all of them, or to have acquitted some of them and found the others guilty, or guilty of a less degree of crime than that charged, notwithstanding the evidence to the contrary.

State v. Ostrander, 30 Mo. 13, was a prosecution under an indictment charging murder in the first degree, and although no instructions were given bearing upon murder in the second degree, and the evidence clearly showed the defendant to be guilty of murder in the first degree, a verdict returned by the jury finding the defendant guilty of murder in the second degree was held to be responsive to the indictment, and that the trial court was bound to receive it. Each one had a

right to have the jury pass upon his guilt or innocence, and the evidence considered by the jury in regard to his particular case, unbiased or uninfluenced by the evidence in respect to the guilt of his co-defendants.

In the case at bar the jury might have convicted a part of the defendants, and disagreed as to the others, or have acquitted a part of them and convicted or failed to agree as to the others, had they been so instructed. [1 Bishop's New Criminal Proc. (4 Ed.), sec. 1036; State v. Kaiser, 124 Mo. 651.]

In Abrams v. State, 121 Ga. 170, Abrams and one Osburn were jointly indicted for grand larceny. They were tried together and both were convicted. The point was made in the motion for a new trial that the court failed to instruct the jury distinctly that they might acquit one of the accused even though the other was convicted. The Supreme Court held that it was erroneous, under the peculiar facts of the case, to fail to instruct the jury distinctly, though one of the accused were found guilty, the other might nevertheless be acquitted.

In State v. Daniels, 115 La. Ann. 59, it is held that where three persons are being prosecuted at the same time and under the same indictment, the jury ought to be instructed that one or two may be convicted or acquitted without the conviction or acquittal of the other or others.

Our conclusion is that this instruction or one of similar import should have been given, in view of the first instruction given on the part of the State.

There was no error in refusing instruction number four asked by defendants, because the same question presented by it was fully covered by the State's first instruction.

Nor was there error in refusing either instruction numbered seven, eight or eight and a half asked by defendants, because according to their own testimony they were all equally guilty of murder in the first de-

gree, and no less grade of that offense. The murder was committed in the perpetration of another felony, that is, in breaking out of the penitentiary where the defendants were legally confined, in accordance with a previous concerted plan to make their escape. "When an action, unlawful in itself, is done with deliberation, and with intention of mischief or great bodily harm to some particular person, or of mischief indiscriminately, fall where it may, and death ensues from such act, against or beside the original intention of the party, it will be murder." [Mayes v. People, 106 Ill. l. c. 313.]

That case was cited approvingly by this court in State v. Bailey, 190 Mo. 257.

The Supreme Court of Mississippi said: "It matters not that the purpose to kill Walker was not entertained by all or by any at the outset. 'If two or more combine to do an unlawful thing, and the act of one proceeding, according to the common plan, terminates in a criminal result, though not the particular result intended, all are liable.' 'All who are responsible for what is done unlawfully are so for its entire consequences, whether contemplated or accidental.' " [Peden v. State, 61 Miss. l. c. 270.]

In Boyd v. United States, 142 U. S. l. c. 455, it is said: "If a number of men agree to do an act which, from its nature or the way it is to be done, is an act that will put human life in jeopardy, then the putting of human life in jeopardy, or the destruction of human life, is a necessary and a natural and a probable consequence of the act agreed to be done by the party, and upon the principle of the law I have already announced to you, it is but equal and exact justice that all who enter upon an enterprise of that kind should be responsible for the death of an innocent person that transpires because of the execution of the enterprise then entered upon, and because that enterprise is one that would naturally and reasonably produce that result."

In State v. Walker, 98 Mo. 95, this court held that

one of a number of conspirators was properly convicted of murder of one Green, committed by another member of the conspiracy, when the object of the conspiracy was to take William Edens out of the house and whip him.

Another case strongly in point is Kirby v. State, 23 Tex. App. 13. In that case the defendant and two others were indicted for the murder of the jailer, who had them in jail. "One Cannon was also a prisoner in said jail, and it was agreed between Cannon, the defendant and a third prisoner that Cannon was to assault the jailer and get his pistol and keys away from him and unlock the cell door and allow the defendant and the third prisoner to escape from jail in company with Cannon. The defendant procured an iron rod, around which he wrapped a wet towel, concealed the same for a time and then hung the iron rod with the towel around it out in the corridor where Cannon could reach the same. When the jailer came into the corridor, Cannon seized the iron rod and struck the jailer several blows on the head, from the effects of which he died. A witness near the jail heard someone call out, 'Help,' heard another voice say, 'Kill him,' and heard another say, 'Don't shoot him.' After striking the jailer, Cannon made his escape and failed to unlock the door opening into the defendant's cell; so defendant and his companion never got out of said cell." A trial of the defendant upon the charge of murdering the said jailer resulted in his conviction, and in affirming the case, the appellate court said: "As stated, we have in the evidence before us a common design to escape from jail, preparations to effect that purpose, a deadly weapon prepared as a means to be used if necessary in the accomplishment of the common purpose, the use of the deadly weapon by one of the parties in endeavoring to carry out the common design. Such a homicide, committed under such circumstances, is not a collateral, independent act of the actual perpetrator,

State v. Vaughan.

but is the act of all, because it was an act directly incident to and growing out of the common design of all.''

These instructions were correctly refused upon the further ground that the testimony upon which they were predicated, to the effect that it was distinctly agreed between the defendants and Blake that no one should be hurt or killed in their effort to break out of the prison, was so inconsistent with the physical facts disclosed by the record as to justify the court in refusing them. As was said by SHERWOOD, J., in State v. Pollard, 139 Mo. l. c. 228: ''Heretofore we have said, and we have frequently repeated the observation, that neither courts nor juries are required to yield credence to the statements of a witness who, to save himself from justly merited punishment, challenges the array of all the physical facts in the case, and then boldly invokes instructions based upon such simulated evidence. [State v. Anderson, 89 Mo. l. c. 332; State v. Gilmore, 95 Mo. l. c. 565; State v. Bryant, 102 Mo. 24; State v. Turlington, Ib. l. c. 663; State v. Nelson, 118 Mo. l. c. 127; State v. Brown, 119 Mo. l. c. 538, and numerous other cases.]''

The court correctly restricted the instructions to murder in the first degree, as there was no evidence to justify instructions for any less offense.

For the reason intimated the judgment is reversed and the cause remanded for further trial in accordance with the views we have expressed.

All concur.