EMMA D. BELL et al. v. ED. GEORGE, Appellant.

Division One, June 4, 1918.

1. **EVIDENCE: Champerty: Concealed Interest in Suit: Compulsory Testimony.** It is not prejudicial error to refuse to compel the attorney of record for plaintiffs to testify whether he has a deed from plaintiffs to the lands in suit, or a contract with them whereby he is to receive an interest in the land in case judgment is rendered in their favor, for he is just as much concluded by a judgment against them as he would be had he been joined as a party.

2. **LACHES: Divesting Title: Failure to Pay Taxes.** In an action at law to determine title to land, in which no affirmative equitable relief is asked, plaintiffs cannot be divested of their title based on a patent from the Government, on the equitable doctrine relating to laches, merely because neither they nor their ancestor, the said patentee, had paid any taxes on said land at any time during the fifty-six intervening years since the patent was issued.

3. **PAYMENT OF TAXES: By Whom: No Showing: Presumption.** In the absence of evidence on the subject, the court has a right to presume that the record owner of the land paid the taxes from the time the patent was issued in 1859 up until it was sold for the taxes of 1889, although such record owner is not shown to have been at any time in actual possession. The burden is upon the purchaser at the tax sale to show that the record owner had not paid the taxes prior to his purchase.

4. **PLAT BOOK: Uncertified: Relied On to Show Owner of Land.** An uncertified plat book, purporting to have been made by the proper United States land office, is not competent evidence for any purpose; and, although such plat book shows the lands were entered by a certain person in 1857, and the patents, which were not recorded in the county where the lands are situate, show they were issued to the assignee of said entryman in 1859, the Collector of the Revenue is not authorized to rely upon such uncertified plat book in ascertaining the owner of the land, where the statute requires the suit to be brought against the owner of the land.

5. ———: **Ancient Document.** An uncertified plat book, which does not purport to be the original, is not competent evidence as an ancient document.

275 Mo.—2

6. **PATENT: Notice: Recorded in County.** It is not necessary that the patent, which named a certain person as patentee and described him as the assignee of certain military bounty warrants, should be recorded in the county where the land lies, in order to impart notice to the tax collector that such patentee or his heirs are the owners of the land. The Act of Congress required the patents to be recorded in the General Land Office, and when so recorded they imparted notice to the tax collector that the said certificate holder had assigned his land warrants to the patentee.

Appeal from Butler Circuit Court—*Hon. J. P. Foard,* ·Judge.

Affirmed.

*Lew R. Thomason* for appellant.

(1) The trial court erred in refusing to permit the defendant to show that J. William Chilton was the real party in interest and owner of the lands by an unrecorded deed or contract with the nominal plaintiffs. Every cause shall be prosecuted in the name of the real party. Sec. 1728, R. S. 1909. If J. W. Chilton had succeeded to the claims of the plaintiffs, either by deed or by valid contract, he was the proper party to sue as plaintiff, and it can make no difference whether it would change, strengthen or weaken the defense in this action. Sec. 1729, R. S. 1909; Citizen's Bank v. Burroughs, 178 Mo. 731. Where the answer of the defendant denies that plaintiffs are the real parties in interest such averments are issuable allegations and it is error for the trial court to exclude evidence offered in support of such allegations. Nansen v. Jacobs, 93 Mo. 346. (2) One of the issues tendered by the defendant in his answer was that whatever claim, if any, the plaintiffs had to the lands in controversy, had long since been abandoned, and that plaintiffs had been guilty of the grossest laches. By the uncontroverted evidence it is shown that the plaintiffs' ancestor obtained title to the lands in question on the first day of November, 1859, and that

neither of the plaintiffs, the youngest of whom at the time of the trial was shown to be more than thirty-nine years of age, or their ancestor, had ever been in possession of the lands, or any part thereof, or had ever asserted any claim of, interest in and to said lands or any part thereof, until the institution of this suit, and for more than fifty-six years after obtaining their claim of title. "Laches" is defined to be an unreasonable delay; neglect to do a thing or seek to enforce the right at a proper time. Bouvier's Law Dictionary (3 Ed.), p. 1820; Anderson v. Northrup, 30 Fla. 612. The doctrine of laches is based upon ground of public policy which requires there be peace of society and the discouragement of all stale claims. Mackall v. Casilear, 137 U. S. 556. Naddo v. Bardon, 51 Fed. 498; Shelton v. Horrell, 232 Mo. 376. Turner v. Burk, 81 Ark. 352. The doctrine of laches will prevent the enforcement of a stale claim no matter whether predicated upon a legal or equitable right. State ex rel. v. Reynolds, 243 Mo. 720; Heating Company v. Consolidated Car Heating Co., 174 Fed. 658. Laches though an equitable defense may be joined in the same answer as a general denial. Ledbetter v. Ledbetter, 88 Mo. 60; Munford v. Keet, 154 Mo. 48; Fisher v. Stevens, 143 Mo. 181. (3) The statute to enforce the lien for delinquent taxes upon the lands, provided that: "all actions shall be prosecuted against the owner of the property, if known, and if not known, against the last owner as shown by the records of the county or city at the time the suit was brought." The tax suit under which the defendant claims title was in strict harmony with the provisions of the above statute. It was brought against Amzi Rudolph, the last record owner as shown by the land records of Butler County. In ascertaining the record owner for the purpose of bringing a suit for delinquent taxes, the collector is not confined to the records of deeds as recorded but may look to the plat book. Payne v. Lot, 90 Mo. 676; Noland v. Taylor, 131 Mo. 224; Allen v. Ray, 96 Mo. 542. There is nothing in the statute requiring said plat book to be

certified in any manner or form; the statute only requires that it be obtained from the land offices of the respective district of the county. Sec. 11363, R. S. 1909. An ancient instrument is presumed to be genuine and is admissible in evidence without further proof. Where an instrument is more than thirty years old and is unblemished by alterations the bare production thereof is sufficient to entitle it to admission in evidence. Wynn v. Patterson, 9th Peters (U. S.) 674; Bank of U. S. v. Dandridge, 12 Wheat (U. S.) 70; First Greenleaf on Evidence, sec. 141; Jackson v. Blanshan, 3 Am. Dec. 485; Crane v. Marshall, 33 Am. Dec. 631; Dodge v. Briggs, 27 Fed. 170; Hodge v. Hub, 94 Mo. 489; Wilson v. Snow, 228 U. S. 217. The date of the instrument at the date of the trial determines its admissibility. Gordon v. Graniss, 56 Ga. 539. The plat book offered by the defendant, though uncertified, was the proper record for the Collector of Revenue to consult for the purpose of ascertaining the last record owner of the lands in controversy, for the purpose of recovering the delinquent taxes thereon, and was admissible in evidence. Payne v. Lot, 90 Mo. 676; Noland v. Taylor, 131 Mo. 224; Lond v. Doud, 87 Mo. 197; Kansas City v. Scarritt, 169 Mo. 471. The tax suit against Amzi Rudolph, being in full compliance with the law, the sale of the lands as a result thereof passed the title.

*J. W. Chilton* for respondents.

(1) Respondent's title being a legal title, laches could not be pleaded or urged as a defense thereto. Workman v. Moon, 177 S. W. 862; Chilton v. Nickey, 261 Mo. 232; Hays v. Schall, 229 Mo. 124; Wilcox v. Moore, 196 S. W. 15; Wilcox v. Moore, 199 S. W. 135; Wengler v. McComb, 188 S. W. 76; Meyers v. DeLisle, 259 Mo. 506; Russ v. Hope, 265 Mo. 637. (2) The non-payment of taxes by the owner of land for any length of time whatever, will not of itself bar the owner's title. Actual possession by an adverse claimant is an indispensable pre-requisite to the starting of any

Bell v. George.

Statute of Limitations, or to a plea of · equitable es-
toppel or laches.  Burkham v. Mannewall, 195 Mo. 506;
Haarstick v. Gabriel, 200 Mo. 237; Hays v. Pumphrey,
226 Mo. 119.  (3)  Payment of taxes, surveying land,
cutting timber therefrom and keeping other trespassers
off by one who holds mere color of title to land are not
such acts as constitute actual possession of the land,
and not such acts as will set in motion any Statute of
Limitations or sustain a plea of equitable estoppel as
against the true owner.  Chilton v. Nickey, 261 Mo. 232;
Himmelberger Harrison Lbr. Co. v. McCabe, 220 Mo.
154; Stone v. Perkins, 217 Mo. 602; Chilton v. Com-
anianni, 221 Mo. 685; Pharis v. Jones, 122 Mo. 125;
Nye v. McAlfter, 127 Mo. 529. (4) Section 9303, R. S.
1899, required suits for back taxes to be brought against
the owner of the land.  In construing said statute this
court has held that it is sufficient ordinarily to sue one
whom the public records disclose to be the owner.  But
there is nowhere in the law any authority justifying a
·Collector to resort to an uncertified plat book for the
names of owners.  Unless a plat book is certified it is not
a public record; it is nothing.  And it is not almissible
in evidence for any purpose.  Bell v. Ham, 188 Mo.
App. 71; Stewart v. Lead Belt Co., 200 Mo. 281. (5) The
purported plat book was not an ancient document with-
in the meaning of the law; the ancient document rule
does not apply to mere copies of records.  Byrd v.
Phillips, 111 S. W. 1109, McClerry v. Lewis, 70 Atl.
540.  (6) Land patents issued by the United States
are not required to be recorded upon the deed records
of the county in which the land lies. Chap. 30, R. S.
1909, applies only to instruments "which have been ac-
knowledged or proved according to law." The Chap-
ter on Recorders of Deeds (Sections 10390-10391)
simply permits the record of patents by making it the
duty of the recorder to record such patents as may
be offered to him for that purpose. Secs. 2787-2809,
Chap. 30, R. S. 1909; Webb on Record of Title, sec. 25,
page 59; Wilcox v. Phillips, 260 Mo. 664; Mosher v.
Bacon, 229 Mo. 338; Bell v. Ham, 188 Mo. App. 71;

Nichols v. Hobbs, 197 S. W. 258; United States v. Schurz, 102 U. S. 378; 2 Jones on Real Property, secs. 1377-1728; Wolf v. Brown, 142 Mo. 617. (7) The rule of equitable estoppel cannot be invoked in this action because appellant was never in the actual possession of the land, never improved it or expended any money on it, and his position has suffered no change for the worse by reason of respondents' failure to quiet their title at an earlier date. Robbing the land of its timber certainly did not improve it. Workman v. Moon, 177 S. W. 862; Meyers v. DeLisle, 259 Mo. 512; Marshall v. Hill, 246 Mo. 1; Collier v. Gault, 234 Mo. 465; Williams v. Sands, 251 Mo. 147. (8) The plea of an outstanding title in a third party cannot be invoked as a defense to plaintiff's action to quiet title where plaintiff and defendant claim under a common source, if it be not shown that defendant has acquired the title of such third person. Skillman v. Clardy, 256 Mo. 322; Dixon v. Hunter, 204 Mo. 390. (9) And where a defendant shows no title in himself, he is not concerned with an adjudication of the rights or titles as between the plaintiff and any third party. Authorities above.

RAILEY, C. — This action was commenced in the circuit court of Butler County, Missouri, on February 20, 1915, to quiet title to the southeast quarter and lot 1 of the southwest quarter of section 19, and the northeast quarter of section 30, all in township 26, range 7 east, situate in said county.

It is averred in the petition that plaintiffs own and claim to have title in fee simple to the real estate aforesaid; that defendant makes some claim of title, estate or interest in said land, which is adverse and prejudicial to the estate and title of plaintiffs therein. A decree was then asked, quieting title in them, etc. The petition also alleges that if the court should find "that defendant, since the year 1903, purchased said lands, or any part thereof, at a void tax sale, and

thereafter in good faith paid taxes thereon, under claim of ownership of said lands, whereby plaintiffs are liable to re-imburse defendant for taxes so paid on said lands, the plaintiffs now offer, and tender to pay such taxes, with six per cent interest thereon, as soon as they may be found and adjudged by the court.''

Defendant, Ed. George, filed an answer, admitting that he claims title to the lands aforesaid. He further alleges that whatever claims, if any, the plaintiffs may have in or to said lands have long since been abandoned by them; that neither plaintiffs, nor those under whom they claim, have ever been in possession of said lands, nor have they or either of them ever paid any State, county or other tax assessed against said lands, nor have they ever exercised any acts of ownership over said lands, nor have they ever asserted any claim or right of title to said lands until the institution of this suit. He alleges that plaintiffs have been guilty of such gross laches as to debar and preclude them from asserting any right, title, claim or interest in said lands, either at law or in equity; ''that defendant has paid all taxes on said land and exercised such acts of ownership of which as said lands were susceptible.''

The answer further alleges that plaintiffs are not the real parties in interest in this action, but that said action is prosecuted in their names by one J. William Chilton, who is the real party in interest; that he is prosecuting said action under an unrecorded deed conveying to him an interest in said lands, equal to or greater than one-half thereof, or by virtue of a contract, whereby, if successful, he shall receive a part of said lands as compensation, and be responsible for the costs of this action, the plaintiffs being non-residents of Missouri; that said action was instituted and is being prosecuted under said champertous contract: He further denies, in said answer, each and every allegation of the petition, except that he claims title to said lands.

Defendant, further answering, by way of cross-bill, alleges that he is the owner and claims title to the lands aforesaid; that plaintiffs claim some title, estate

or interest in the above lands which is adverse and pre-judicial to the estate, title and interest of this defend-ant. Wherefore, defendant prays the court to ascertain and determine the estate, title and interest of the de-fendant, and of the plaintiffs respectively, in. and to said lands, and by its decree to adjudge, determine, define and quiet the title of this defendant in said lands. He also prays, that plaintiffs be, by the order, judgment and decree of the court, forever barred and precluded from asserting any right, title, claim or in-terest in and to said lands, or any part thereof; and for all such other and further relief to which defendant may be entitled.

The case was tried without a jury on February 3, 1915, and taken under advisement by the court.

### PLAINTIFFS' EVIDENCE.

The respondents introduced in evidence a certified copy of the patent issued by the United States to Wil-liam B. Dorn, dated November 1, 1859, and recorded in Butler County, Missouri, November 20, 1912. As set out in the record, it reads as follows:

"United States of America, to all whom these present shall come, greeting: Whereas, in pursuance of an act of Congress, approved March 3, 1855, entitled an act giving bounty lands to officers and soldiers hav-ing been engaged in military service of the United States of America, there has been deposited in the General Land Office of the United States Warrant No. 29488 with evidence that the same has been duly located upon Lot One of the southwest quarter of section nineteen, township 26, north range seven east, Butler County, Missouri, in favor of Amzi Rudolph. The certificate of said location being duly assigned by said Amzi Rudolph to William B. Dorn; now know ye that there is therefore granted by the United States of America unto the said William B. Dorn, as assignee as aforesaid, and unto his heirs, the lands above described, to have and to hold forever, and which said patent

was duly executed by the President of the United States.''

Defendant objected to the introduction of the certified copy of said patent, as evidence, for the reason, that the lands described therein were entered by the said Amzi Rudolph, in the year 1857, under a military land warrant; that said entry by said Amzi Rudolph was of record in the offices of the Recorder of Deeds for the county of Butler and State of Missouri; that said Rudolph permitted the taxes on said lands to become delinquent and unpaid for many years; that suit was commenced by the Collector of Revenue of said county against said Rudolph, as the record owner of said lands, as shown by said records; that he was the proper party to sue for said taxes under the laws of Missouri; that judgment was rendered against him for non-payment of said delinquent taxes; that said lands were sold, and the title thereto passed by said sale; that the unrecorded patent to said William B. Dorn, as assignee, is insufficient to affect or destroy the validity of said sale; that by virtue of said sale, plaintiffs have neither the legal nor equitable title to said lands. This objection was overruled.

Plaintiffs next offered in evidence a certified copy of United States patent to Wm. B. Dorn, as assignee of said Rudolph, dated November 1, 1859, and recorded November 20, 1912, conveying the west half of the southeast quarter of section 19, township 26 north, range 7 east, in said county. Same objection was made and overruled.

Plaintiffs next introduced in evidence a certified copy of United States patent to said Dorn, as assignee of said Rudolph, dated November 1, 1859, and recorded in said county November 20, 1912, conveying lot 1 of the northwest quarter and the southwest quarter of the northeast quarter of section 30, township 26 north, range 7 east, in said county. Same objection was made and overruled.

Plaintiffs next introduced in evidence, a United States patent to said Dorn, as assignee of said Rudolph,

dated November 1, 1859, and recorded in said county, November 20, 1912, conveying the east half of the northeast quarter and the northwest quarter of the northeast quarter of section 30, township and range aforesaid, located in Butler County, Missouri. Same objection was made and overruled.

Plaintiffs next offered in evidence the deposition of Erma D. Bell. Witness testified that her mother, Mattie G. Felton, is still alive, and married J. R. Felton in 1886; that her father, William B. Dorn, died in South Carolina, in December, 1876, at the age of seventy-eight years; that the other plaintiffs herein are the heirs at law of said Wm. B. Dorn.

Plaintiffs also introduced in evidence a certified copy of the will of Wm. B. Dorn, which Division Two of this court held invalid in Bell v. Smith, 271 Mo. 619. In the will, testator attempted to give his wife a life estate in said lands, with remainder to his heirs. The will was objected to by defendant and his objection overruled.

"Thereupon it is admitted that said lands are not now, nor have they ever been, in the actual possession of any person or persons."

### DEFENDANT'S EVIDENCE.

E. R. Lentz, a witness for defendant, testified: That he was a practicing lawyer, and had been engaged in the real estate business in Butler County, Missouri, since 1878; that he had frequently examined the plat book on file in the office of the Recorder of Deeds of above county; that the book shown him is the above plat book, and it has been generally used as one of the public records of Butler County since 1878; that he examined it in 1878; that when he first examined the book it was in the custody of the Circuit Clerk, who was *ex officio* recorder; that since the separation of said offices, it has been in the Recorder's office; that he was told by the Circuit Clerk and Recorder that it had been obtained from the Registrar of the Land

Office at Ironton, Missouri, some time in the later sixties; that he has always found it correct.

Defendant then offered in evidence, over the objection of plaintiffs, the above plat book, for the purpose of showing that all the lands in controversy were entered by Amzi Rudolph, under military land warrants, in the year 1857.

Defendant next offered in evidence, over the objection of plaintiffs, a certificate signed by J. H. Duncan, Registrar of the United States Land Office at Springfield, Missouri, with the seal affixed, showing that all the lands described in plaintffs' petition were entered by Amzi Rudolph on June 22, 1857, under military land warrants.

Defendant next offered in evidence, over the objection of plaintiffs, a sheriff's deed in proper form, duly executed, and purporting to convey all the land described in plaintiffs' petition dated November 5, 1889, acknowledged November 25, 1889, filed for record December 10, 1889, and which purported to convey all of the interest in said lands of Amzi Rudolph to Wm. Ferguson, as grantee.

"It is admitted by the plaintiffs herein, that the defendant Ed. George is the owner of mesne conveyance of any and all title which may have passed by the sheriff's deed, which the defendant has just introduced in evidence."

Ed. George testified that he claimed to own the lands in controversy; that he acquired deed to said lands in 1904 or 1905; that he has exercised such acts of ownership over said lands as they were susceptible of, that is, he paid the taxes thereon since 1905, and for two or three years back taxes; that he never knew of Wm. B. Dorn, or his heirs, claiming any interest in these lands until this suit was brought. On cross-examination, he testified that he did not mean to state that he had been in the *actual* possession of these lands, but has looked after them; that he has paid some one

all the time to protect them from trespassers; *that he had sold some of the timber from this land.*

J. William Chilton was sworn as a witness in behalf of defendant. He testified that he first saw Mrs. Bell in 1912, but never saw any of the other plaintiffs, with one exception; that he has had some correspondence, mostly with Mrs. Bell; that she wrote first. Witness was then asked if he had a deed to this land, conveying any interest therein to him. This was objected to by witness as a confidential matter, and the objection was sustained. He stated, however, that he had no contract by which he was to be responsible for the costs herein, if this suit was decided in favor of defendant.

The foregoing covered all the testimony in the case. No instructions were asked by either plaintiffs or defendant, nor were any given by the court of its own motion.

### FINDINGS.

On July 5, 1915, the trial court decided the case, and made a finding of facts. It found that W. B. Dorn was the patentee of the lands in controversy; that said W. B. Dorn died in 1876; that Mattie G. Felton was his widow; that the other plaintiffs are his heirs as well as devisees, under the will aforesaid; that said Mattie G. Felton has a life estate in said lands and that the remaining plaintiffs are the owners in fee of the lands described in petition. The court further found that defendant Ed. George had no interest, estate or title to any part of said lands. A decree was entered in due form, in favor of said plaintiffs, in accordance with said findings.

Defendant in due time filed his motions for a new trial and in arrest of judgment. Both motions were overruled, and the cause duly appealed by him to this court.

I. It is contended by appellant that the trial court committed error in refusing to require J. William

Undisclosed
Party.

Chilton, counsel for plaintiffs, to testify as to whether or not he had a contract with plaintiffs, whereby he was to receive an interest in the land mentioned in the petition.

It is not necessary to determine in this case whether Mr. Chilton was within the law in declining to testify in respect to above matter, nor whether he was justified in declining to answer the questions propounded, by virtue of Section 6362, Revised Statutes 1909. He was counsel for plaintiffs in the trial court, and is the attorney of record for them here. He is just as much concluded by the judgment rendered in this cause, as though he had been joined as a party to the action. [Titus v. Development Co., 264 Mo. 1. c. 246 and following; State ex rel. v. Stone, 269 Mo. 1. c. 344 and cases cited.]

In the Titus case supra, plaintiff had defended an action in the name of his clients, where the title to real estate was involved, when he had in his possession at the time an unrecorded deed to said land. His clients were unsuccessful in the first suit, and thereupon, Titus brought a suit in ejectment for the same land, after having his deed recorded. On page 248, we said:

"It is apparent from the record that plaintiff was attempting, in the name of his grantors, to litigate his own title with the heirs of Edward A. Stevens behind a masked battery, and if unsuccessful, as he was in that litigation, to open up a new proceeding as an innocent purchaser for value, as he has attempted to do in this case. . . .

"We are satisfied, from the record, that plaintiff had the entire control and management of said cause in behalf of his grantors, and that every step taken therein was for his own benefit and in defense of his own title. We therefore conclude that on the facts presented here the plaintiff is as much bound by the decree in the above cause as he would have been had he been joined as a defendant in said action."

In State ex rel. v. Stone, 269 Mo. 1. c. 344, we held that:

"Whenever a party is interested in the subject-matter of pending litigation, and is placed in the control and management of the defense therein, he is just as much bound by the judgment in the cause as the real defendant in whose name the defense is made."

The principle of law announced in both the above cases is amply supported by a number of authorities cited therein.

If we should conclude that the tax judgment is valid, and that the title to the land in controversy passed under the sheriff's tax deed, then defendant's title is good as against these plaintiffs, and would likewise be good as against J. William Chilton, even if he did have an unrecorded deed to all or any part of said land.

In view of the foregoing, defendant was not injured by the ruling of the court, whether right or wrong, in refusing to compel Chilton to answer the questions propounded to him.

II. It is claimed by appellant that he has acquired title to the lands in controversy, because of the alleged

Laches.

*laches* of plaintiffs and William B. Dorn in failing to pay any taxes thereon for fifty-six years.

This is purely an action at law, in which no affirmative equitable relief is asked by either plaintiffs or defendant. The respectve claims of title are set out in the preceding statement. On the record thus made, the plaintiffs cannot be divested of their legal title by the application of the equitable doctrine relating to laches. [Charles P. Hunter et al. v. Louise C. Moore, decided by this Division, March 29, 1918; Wilcox v. Moore, 199 S. W. (Mo.) 1. c. 136; Garrison v. Taff, 197 S. W. (Mo.) 1. c. 274; Kellogg v. Moore, 196 S. W. (Mo.) 15; Chilton v. Nickey, 261 Mo. 1. c. 243; Hayes v. Schall, 229 Mo. 114.]

III. While defendant asserts that neither Wm. B. Dorn nor plaintiffs have ever paid any taxes on this land in fifty-six years, this assertion is not sustained by the evidence. The tax deed relied upon by defendant is dated November 5, 1889. He only claims to have paid the taxes after said date. This action was commenced on February 20, 1915. He failed to show that Amzi Rudolph had ever, at any time, paid any taxes, and as he assigned his land warrants to Wm. B. Dorn prior to November 1, 1859, it can hardly be assumed that Rudolph paid any of the taxes on the land after he assigned the warrants to Dorn. As Dorn was the record owner of the land until his death, and as plaintiffs became the record owners at his death, in the absence of evidence upon that subject, the trial court had the right to presume that the taxes, from November 1, 1859 to 1889, were paid by Dorn and plaintiffs. [Hunter et al. v. Moore, supra.] The burden of proof, upon this subject, devolved upon defendant, and he failed to successfully carry the burden.

*Payment of Taxes.*

In the Hunter-Moore case, supra, the plaintiffs were never in possession of the land, although they were the record owners thereof. It did not appear from the evidence, that they had ever, at any time, paid any taxes on the land. The defendant, Moore, under color of title, pleaded the thirty-one-year Statute of Limitations, and charged that neither the plaintiffs, nor their predecessors in title, had ever paid any taxes on said land, while she and those under whom she claimed had paid the taxes during said period. We held in the above case, that as the evidence did not show who had paid the taxes on said land for three or four years, out of the thirty years, it could not be presumed that plaintiffs and those under whom they claimed, as the record owners, had not paid them.

Even if defendant were relying upon the thirty-one year Statute of Limitations, the trial court was

justified on the record before us in finding against him in respect to above matter.

IV.   Defendant testified: "I have never known of Wm. B. Dorn, or his heirs, claiming any interest in these lands until this suit was brought."   He claims to have acquired his title in 1904 or 1905.   There is nothing in the record to indicate that he **Knowledge of Record Owner.** had ever heard of plaintiffs, or William B. Dorn at that time, much less being misled by anything they said, did, or failed to do. The record fails to show how much defendant paid for the land; the amount of taxes he paid; the amount he claims to have paid for keeping trespassers off, and likewise fails to show how much timber he confessedly sold off the land.   It is not surprising that the trial court failed to recognize any plausible grounds for the application of the equitable doctrine relating to laches. The trial court was well within the law, in holding that there is no merit in the above contention of appellant.

V.   It is admitted that the plat book heretofore mentioned shows that Amzi Rudolph, in 1857, entered the lands in controversy.   It is also admitted that said **Plat Book.** plat book is not certified as correct by any officer of the United States Land Office.   It was offered in evidence by defendant, and objected to by respondents, on the ground that it was not a plat book within the meaning of the law.   Said objection was overruled, an exception saved, and the plat considered as evidence.

The patents to the lands in controversy issued to William B. Dorn are dated November 1, 1859, and recite on their face that Amzi Rudolph assigned the land warrants issued to him, for said land, to Wm. B. Dorn.   The tax suit brought in 1889, through which defendant claims title, was against said Amzi Rudolph, and not against these plaintiffs.   William B. Dorn having died in 1876, these plaintiffs were the record owners of said land, when the tax suit was brought in

1889. Section 7682, Revised Statutes 1889, which was carried into Revised Statutes 1899, as Section 9303, in express terms required that the tax suit, under which defendant claims title, should be brought against the owner of the land.

Notwithstanding the plain requirement of Section 7682 that the tax suit should be brought against the owner of the property, it is insisted by appellant, that the tax collector had the right to rely on the plat heretofore mentioned, as the patents were not recorded in Butler County, Missouri, in determining who was the owner of said lands; and that the tax proceeding was properly prosecuted against Amzi Rudolph, who was shown by said plat to be the party who had entered these lands in 1857.

We will now proceed to a consideration of defendant's contention, in respect to above matter.

VI. Was the plat heretofore mentioned, and offered in evidence by appellant, competent for any purpose, without having been properly certified?

Section 6290, Revised Statutes 1909, provides, that: "Copies of any entry or entries, or memoranda, made on the books of the office of any register or receiver of any United States land office, certified by **Plat Book.** the said register or receiver to be correct, shall be received in evidence in the trial of any cause in any of the courts of this State." This section has been upon our statute books for more than sixty years. We construed the same in Stewart v. Lead Belt Land Co., 200 Mo. l. c. 290, and held that an uncertified plat like the one in controversy should have been excluded as evidence. To same effect is Bell v. Ham, 188 Mo. App. l. c. 81.

We accordingly rule that the above plat was incompetent as evidence for any purpose and should have been excluded. The Collector, therefore, in detei mining who was the *owner* of said lands, was not justified in resorting to the plat for that purpose.

VII.   Was said plat competent evidence as an ancient document, regardless of its age?   It does not purport to be the original, and the law relating to the **Ancient** admission in evidence of ancient documents, **Document.** has no application to such an instrument. [Laclede Land & Imp. Co. v. Goodno, 181 S. W. (Mo.); l. c. 413; Stewart v. Lead BBelt Land Co., 200 Mo. l. c. 290; McCleery v. Lewis, 104 Me. l. c. 37, 70 Atl. 540.]

VIII.   Was it necessary that the patents issued to Wm. B. Dorn by the United States, on November 1, 1859, should have been recorded in Butler County, Missouri, to impart notice to the tax collector, that **Recording** Dorn or his heirs were the owners of the **Patent.** land in controversy?   Section 705, Volume 1, United States Compiled Statutes (1913), page 280, R. S. sec. 458, in express terms, provides that such patents shall be recorded in the land office at Washington, D. C.

In Organ v. Bunnell, 184 S. W. l. c. 104, we said: "The patent aforesaid was not recorded in Dent County, but was duly recorded at the General Land Office in Washington, D. C., at the time it was issued in 1859.   There is no provision in our statute which requires a patent from the United States to be recorded in the county where the land lies.   [Wilcox v. Phillips, 260 Mo. l. c. 680, 169 S. W. 55; Mosher v. Bacon, 229 Mo. l. c. 358, 129 S. W. 680; 2 Jones on Real Property, secs. 1377, 1378.]"

These patents thus recorded, imparted notice to the Collector and all other persons that Amzi Rudolph had assigned his land warrants covering the land in question to William B. Dorn, and that the latter, on November 1, 1859, became the record owner of said lands.

IX.   We have given full consideration to all the questions involved in this litigation, and find nothing

Conclusion.        in the record which would warrant us in disturbing the judgment below in favor of plaintiffs.    We accordingly affirm the judgment.    *Brown, C.,* concurs.

PER CURIAM:   The foregoing opinion of RAILEY, C., is adopted as the opinion of the court.   All of the judges concur; *Bond, P. J.,* in the result.