WILSON, Plaintiff in Error, v. PURL.

Division One, March 7, 1899.

1. **Ejectment**: INSUFFICIENCY OF EVIDENCE: ERRORS CONSIDERED. The facts of this case are reviewed and it is held that, giving defendant's evidence every possible inference that could be reasonably drawn from it, and considering the clearest hearsay testimony (improperly admitted) as legal and proper, the judgment should have been for the plaintiff, and plaintiff ought not to have been put to the necessity of appealing to this court for the establishment of his right to the land sued for. And it clearly appearing that the trial court ought to have instructed the jury to return a verdict for plaintiff, and refused to do so, no other error need be considered in disposing of the case.

2. ——: ——: EXTENT OF POSSESSION. The adverse and continuous possession by defendant for ten years of a part, and a claim to all of the land to which plaintiff held title, with a color of title to only a part thereof, will not vest in defendant title to all the lands in plaintiff's deed.

3. ——: ——: ——: TRESPASSER. The possession of a mere trespasser does not extend beyond the limits of the land actually subjected to use by him—in this case a small space of twelve by fourteen feet on which his cabin stood. And unless the exact location of such space of land actually subjected to use by the trespasser, has been defined by him, it can not be carved out of the tract at random, and hence he can not recover even that much, although his claim to it may have ripened into title by limitation.

VOL. 148 mo—29

*Error to Morgan Circuit Court.*—Hon. D. W.
Shackleford, Judge.

Reversed and remanded (with directions).

A. L. Ross for plaintiff in error.

(1)   The court erred in refusing to instruct the jury to
return a verdict for plaintiff.   Wilson v. Purl, 133 Mo. 367;
Nye v. Alfter, 127 Mo. 529.   (2)   The court erred in refus-
ing to instruct the jury that defendant had no color of title to
west half of the southwest quarter of section 13, and west
half of the northwest quarter of section 24, and that he had
failed to show the extent and boundary of his actual posses-
sion.     Hughes v. Israel, 73 Mo. 538; Wilson v. Purl, 133
Mo. 367.   (3)   The burden was upon defendant to make out
his title by adverse possession.   Nye v. Alfter, 127 Mo. 529;
Lynde v. Williams, 68 Mo. 369; Hunt v. Railroad, 75 Mo.
252; Bledsoe v. Sims, 53 Mo. 305; Key v. Jennings, 66 Mo.
356; Alexander v. Campbell, 74 Mo. 142; Spurlock v.
Dougherty, 81 Mo. 171.   (4)   (a) The tax deed admitted in
evidence on behalf of defendant is void on its face.   The deed
recites that judgment was rendered on the tenth day of July,
1865.    The statute then in force required such judgments to
be rendered at a term beginning on the third Monday
in July.   Acts 1864, sec. 1, p. 84; G. S. 1865, chap. 13, sec.
87, p. 123; Kinney v. Forsythe, 96 Mo. 414; Spurlock v.
Dougherty, 81 Mo. 171.   (b) Said deed recites that notice
was given "according to law."   Such notice was insufficient
and renders the deed void.   Hubbard v. Gilpin, 57 Mo. 441.
(5) Plaintiff was a nonresident.   Without actual or construct-
ive notice to him of the existence of such deed it will not
avail defendant as color of title to support adverse possession.

Crispen v. Hanavan, 50 Mo. 536; Turner v. Hall, 60 Mo. 271; Kinney v. Forsythe, 96 Mo. 414.   (6) The court erred in admitting the evidence of Clark, based on what Brown told him, and in refusing to strike out said evidence when the answer of the witness disclosed that the testimony was hearsay," and prejudicial.   Chouteau v. Searcy, 8 Mo. 733; Wood v. Hicks, 36 Mo. 320; Langsdorf v. Field, 36 Mo. 440. (7)   The court erred in refusing to permit plaintiff to read to the jury in rebuttal the testimony of Hugh Purl, the defendant, as preserved in the bill of exceptions made on a former trial of this cause.   There is no merit in the objection of defendant's counsel that the witness was present.   The witness had sworn differently on material issues on the former trial and his said testimony was offered for the purpose of contradicting him.   Acts 1891, p. 138.   (8)   Nonpayment of taxes by defendant and payment of same by plaintiff is competent to show that the former's possession was not under claim of ownership and should have gone to the jury.   Allen v. Mansfield, 108 Mo. 343; Gaines v. Saunders, 87 Mo. 557.

D. E. WRAY for defendant in error.

ROBINSON, J.—This is an action in ejectment to recover the possession of the east half of the southeast quarter of section 14, the west half of the southwest quarter of section 13, and the west half of the northwest quarter of section 24, all in township 41, range 17, in Morgan county, Missouri, instituted January 2, 1890, by plaintiff as the owner of the same by patent from the United States government, issued November 1, 1859, against defendant, who claims title by adverse possession for the statutory period of limitation, interposed under a general denial.

The case was before this court at its October term, 1895, and is reported in the 133 Mo. 367, when it was reversed and remanded for a new trial.   At the last as at the former trial

of the cause, a verdict and judgment was rendered in favor of the defendant for the entire tract of land, and plaintiff has brought the case here on its second appeal.

At the former hearing of this case in this court there was no other evidence showing a continuous adverse possession of this land or any part of it by defendant and those through whom he claimed except as was found in the statement read in evidence as the testimony of Mrs. Lidia Stephens, and that the majority of this court then held was worthless as evidence, being but a statement of conclusions rather than a statement of facts, and on account of the admission of same as testimony the judgment then rendered for defendant was reversed and the cause remanded for a new trial. In that opinion this court then further said, that as to the eighty acres of land in section 24 and all that part in section 13 not in the actual occupancy of the defendant and those through whom he claims, the plaintiff ought to have recovered.

With practically the same testimony offered affecting plaintiff's and defendant's rights to those two eighty acre tracts of the land, as offered at the former trial, the circuit court has again, in the face of this court's suggestion, compelled plaintiff to prosecute a second appeal to this court, to prevent the unlawful appropriation of his land by defendant without the shadow of a claim thereto, except to a possible strip twelve by fourteen feet square, on which the cabin of Mrs. Stephens was located, if its location could now be definitely ascertained and if the self-contradicted testimony of the defendant could have been believed.

The facts as developed at the first and at the second trial of this cause are substantially identical except that at the last trial defendant did not have the benefit of the statement, read to the jury, as the testimony of Mrs. Stephens, this court, as before said, having on the first appeal declared it worthless as testimony, and in the further particular that at

the first trial defendant testified that he did not know where Mrs. Stephens was living at the time he took possession of the land in suit and moved into the log cabin that she and her son had occupied in section 13, prior to his occupancy of it, while at the last trial defendant with his recollection brightened by the necessity of the situation (for no proof, with the statement offered as the testimony of Mrs. Stephens at the first trial absent in this, had been made, connecting defendant's eight years possession of the land, or any part of it, with a prior possession of any one to make out the requisite ten years continued holding), testified, "as they" (referring to Mrs. Stephens and her son) "moved out their last load I took in a load of plunder and planks to put a floor in the house. As they went off with their last load they taken the floor away." We will however give here also defendant's explanation for the variation in his testimony in his own language, as he answered an inquiry to that effect by plaintiff's counsel: "Q. How does it happen if you saw them (meaning Mrs. Stephens and her son), moving out of the cabin the same day you moved in, you didn't remember it on the trial before?" A. "My remembrance is bad."

But whether the difference in defendant's testimony at the first and last trial of this case is accounted for on the grounds of his bad remembrance, as he explains it, or upon the ground that he, like many of renown, has arisen to the necessity of his surroundings, is a matter of no concern here for the verdict gives to defendant's last testimony the force of absolute verity, and as such we must treat it after verdict, still there is no testimony upon which a verdict should have been rendered or upon which a judgment can be bottomed for either of the tracts of land in controversy, or any part of said tract or tracts.

Numerous errors have been assigned by the plaintiff for the reversal of the judgment entered herein, but as the first assigned, the refusal of the court to instruct the jury to return

a verdict for plaintiff," is sufficient, none others need be considered.

Give to the testimony offered in this case in behalf of defendant every possible inference that could be reasonably drawn therefrom, consider the clearest hearsay testimony, permitted to be detailed before the jury, as legal and proper, from every and all facts thus shown the judgment should have been for plaintiff, and there is no excuse for this case again being before this court on plaintiff's second appeal after what was said by this court when the case was here on its first appeal.

The facts in this case show that plaintiff acquired title to the land in suit by patent from the United States Government on November 1, 1859, and from that time to the present has been the record title owner of the land, and has paid the taxes upon all of the same up to the time of the institution of this suit, except for the years 1860 and 1866 the taxes appear not to have been paid upon the east half of the southeast quarter of section 14 thereof, and that eighty acres of the land was sold for taxes assessed against it for those two years, in the year 1867, and that C. C. Brown and George P. Clark became the purchasers thereof at said sale, and on the twenty-fourth day of April, 1869, the collector of Morgan county made to said Brown and Clark a deed therefor; that thereafter on October 4, 1881, Brown and Clark by quitclaim deed conveyed said east half of the southeast quarter in section 14 to this defendant, and that he in the latter part of the year 1881, or the early part of 1882 moved into an old log cabin twelve by fourteen feet square without roof or floor, standing on the west half of the southwest quarter of section 13 of the land in suit, in which, defendant says, Mrs. Stephens was then and had been living for the past three or four years prior to that time; and as if to be extremely accurate least the chain of continuity as to the possession of the cabin (his then only foothold upon his land), be broken (and not having

the benefit of the statement read at the first trial as the testimony of Mrs. Stephens on the question of continuous possession), he testified as stated above, "that as he moved his first load of plunder into the cabin they (meaning Mrs. Stephens and her son) moved out their last load;" that no part of the land in suit at that time was inclosed or under cultivation, but that immediately upon moving into the cabin he began cleaning up the land, and at the time of the institution of this suit, had cleaned out and put in cultivation about 16 or 18 acres in section 13, about one acre in each of sections 14 and 24 of this land, and that he had built the house in which he now lived since moving upon the land, and that the old cabin at first occupied by him just east of his present house had been torn down and destroyed, and that its exact location could not now be given.

There was also testimony offered tending to show that another cabin had been built and occupied by parties on the east half of the southeast quarter of section 14, but when, or by whom, it was built, how long it was occupied or when deserted and torn down, no one seems to know. At any rate its possession was not connected with that of defendant so as to be continuous for a time sufficient to ripen into a title adverse to that of plaintiffs.

Neither Clark nor Brown at any time ever took possession of the land in section 14 covered by their tax deed, or any other portion of the land in controversy; but Clark testified that Brown told him that Mrs. Stephens was their tenant, and that she was holding the land as their tenant. Of the nature of the tenancy of Mrs. Stephens, when it began, when it was to terminate or did terminate, he was in complete ignorance and knew nothing. So far as disclosed by the testimony in this case Mrs. Stephens never paid or agreed to pay a cent as rent to Brown and Clark or either of them or any one else. She paid no taxes upon the land, made no improvements thereon, other than the original building of her cabin,

if that inference can be drawn from the fact that she is the only party that is shown to have occupied it until the time defendant moved into it in the year 1881 or 1882. Nothing was shown at the present trial to indicate that Mrs. Stephens ever did an act, or uttered a word, looking to the assertion of a right or claim of right to the land in suit, or any part thereof, other than the mere unpretentious use of the twelve by fourteen foot square of ground upon which the foundation of her cabin, rested, and Clark's worthless declarations as to what his partner Brown had told him about her being upon the land as their tenant.

If however it be conceded that all was established that defendant contends for, "that Mrs. Stephens was the tenant in fact of Clark and Brown and had occupied for three or four years, or longer, the cabin in which she was living in section 13, before the defendant moved into and took possession of it in the latter part of the year 1881 or the early part of the year 1882, and that while in said cabin as tenant of Clark and Brown, she claimed in their name, all the land in controversy, up to the time and date that Clark and Brown conveyed by quitclaim deed to defendant the east half of the southeast quarter of section 14, and that Mrs. Stephens then delivered her possession of the cabin to defendant and surrendered to him all her right as tenant of said Clark and Brown," still defendant has no claim or right adequate to defeat the action of plaintiff, as the title owner of the land in suit or of any part of it.

There is no pretense that any one was ever in the actual occupancy of the west half of the northwest quarter of section 24 before defendant moved upon the land in the year 1881 or 1882, or that any one with whom the defendant or his grantors were in any wise connected or related was ever in the actual occupancy of any part of the east half of the southeast quarter of section 14 before that date, and as to the west half of the southwest quarter of section 13 there was no

actual occupancy of it or any part of it, except that part occupied by the cabin of Mrs. Stephens. The only other occupancy of this land is to be found in the fancy of the witness Clark. There no doubt a mental inclosure had been erected around all of plaintiff's land, to warn and ward off all other like claimants as himself, and this the defendant has ever kept up and preserved as a part and parcel of the undefined appurtenances contained in the conveyance to him by Clark and Brown on October 4, 1881; but unfortunately for defendant, in courts where things practiced are considered, such a mental inclosure, built in the town offices of a land grabber is not an adequate substitute for boards, barbed wire or oak rails, from which the wild lands of this country generally are to be found fenced. The manifestation of ownership, of dominion over, or the adverse possession of lands, must be physical, not mental strictly, as in this case.

This case seems to have been tried upon the erroneous and novel theory that if defendant and those through whom he claims had been in the open, notorious, adverse and continuous possession of any part of the land in suit to which plaintiff held title, claiming the whole thereof for ten consecutive years, with color of title to a part thereof in defendant, that defendant's title to all the land included within the boundary of plaintiff's deed would vest in defendant by limitation. Upon no other theory, under the facts in this case, could a judgment for defendant have been rendered, or be maintained.

Until defendant actually inclosed with a fence the one acre of ground in section 14, after he moved into the cabin in section 13, the constructive possession of that entire eighty acres would certainly have followed and been in the plaintiff, the holder of the legal title of record of said land, and did not follow the mere color of title, furnished by the unrecorded tax deed of Clark and Brown. Thus defendant's actual occupancy of the one acre in that section since 1881 or 1882,

claiming the whole of said section under his deed from Clark and Brown, is unavailing to him as a defense of title by adverse possession for the statutory period, against plaintiff as the owner of the true title, both as to the one acre, and the entire body of land in that section. As to the eighty acres in section 24, defendant had no claim of title whatever. Neither he, Clark or Brown or any one in their name or stead had ever asserted any physical act of authority over or possession thereto until after the years 1881 or 1882 when defendant moved upon the adjoining eighty acres and inclosed about one acre of this tract with his improvements in section 13. So as to that acre inclosed, as well as to the remaining seventy-nine acres of the eighty acres in section 24 there has been no holding adverse or otherwise for the statutory period, to cause a title to ripen in defendant.

As to the land in section 13, defendant's position to it is little or no better than to the land in section 24. To it neither he, Clark nor Brown ever had any claim of title. The possession of the cabin on the eighty acres by Mrs. Stephens for several years prior to defendant's entry thereon gains no additional merit by calling her the tenant of Clark and Brown. Her possession, whether as tenant of Clark and Brown, or as a mere independent trespasser upon her own responsibility, would not extend beyond the limit of the land actually subjected to use, and that was but the small space of twelve by fourteen feet square upon which her cabin was standing. Any mere mental boundary which she might have thrown up around this eighty acres, or around it, in connection with the other two eighties from her cabin door in the name and behalf of Clark and Brown, as their tenant, was no less invisible to the plaintiff and those looking after the land for him, than that construed by Clark and Brown from their office in Versailles fifteen miles distant. So, as to this eighty acres there was no open, adverse and continuous possession by defendant, and those through whom he sought to claim for the

statutory period of limitation.   Of the twelve by fourteen feet square of ground covered by the cabin standing upon this eighty acres, of which it might be said, his possession connected with that of Mrs. Stephens was of sufficient duration to have ripened into title by limitation, its exact location is not defined, and has not been preserved by defendant that it might be carved out to him as a cherished trophy gathered in a desperate legal battle for larger gains.  For the foregoing reason the judgment of the circuit court will be reversed and the cause remanded with direction that a judgment be entered for plaintiff for the entire land in controversy.   BRACE, P. J. and VALLIANT, J., concur; MARSHALL, J., absent.